| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:15-CR-69 |
| | § | |
| IAN CHRISTIAN ANDERSON | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Ian Christian Anderson's ("Anderson") Emergency/Expedited Motion for Reduction in Sentence (#53), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of the Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#56). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On September 10, 2015, Anderson pleaded guilty pursuant to a non-binding plea agreement to Count 1 of the Indictment charging him with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On March 4, 2016, the court sentenced him to 135 months' imprisonment, followed by a 10-year term of supervised release. Anderson is currently housed at Federal Correctional Institution Fort Dix, located in Joint Base MDL, New Jersey ("FCI Fort Dix"). His projected release date is December 24, 2024.

II.     Analysis

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*,

No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his

administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, BOP records indicate that Anderson submitted his request for compassionate release to the Warden of FCI Fort Dix on September 27, 2020. According to the Government's response, the request was denied on October 6, 2020. The Government does not contest Anderson's satisfaction of the exhaustion requirement. Although Anderson complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As grounds for his motion, Anderson states

> Mr. Anderson's family member[s'] risk to the virus, the passing of his mother in 2019, his elderly and dying father, and his own elevated risk to COVID-19 because of his underlying medical condition, independently and in conjunction with the COVID-19 pandemic, amount to extraordinary and compelling circumstances that warrant a reduction in sentence to time served.

For the following reasons, the court disagrees.

A.   Medical Condition

In the instant motion, Anderson contends that he is eligible for compassionate release due to his medical conditions that "put him in the 'elevated risk' category for infection to COVID-19," specifically neurodegenerative damage, bursitis, arthritis, and "15[-]year history smoking marijuana." The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

5

impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  According to Anderson's Presentence Investigation Report ("PSR"), prepared in 2015 and revised in 2016, Anderson informed Probation that he had no history of significant medical problems and was generally healthy.  Anderson's BOP medical records indicate that he has been diagnosed with osteoarthritis of the knee, muscle wasting and atrophy of the left hand, and bursitis of the elbow.  According to his motion, Anderson is taking ibuprofen, aspirin, and acetaminophen to treat his conditions.  Anderson references his body mass index ("BMI") as another risk factor for COVID-19.  As of August 24, 2020, Anderson had a BMI of 25.5, down from a BMI of 29 while he was in pretrial detention, indicating that Anderson is overweight but not obese.

The Government contends and Anderson's BOP medical records confirm that Anderson's "medical ailments are well-controlled or in the process of study and treatment."  Further, none of these medical conditions is terminal or substantially diminishes Anderson's ability to provide self-care, nor has any of these afflictions been identified as a risk factor for COVID-19.  Anderson has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.  Even if Anderson's medical condition constituted an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as

here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Moreover, granting Anderson compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing Anderson after he has served only 65 months (approximately 48%) of his 135-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

B.     Family Circumstances

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13

7

cmt. n.1(C)(i)-(ii). Here, Anderson requests compassionate release because his "elderly and dying father, and his father's wife, both need [him] home during this global catastrophe." He claims that he is "the sole caregiver for his father and [father's] wife." This falls outside the scope of USSG § 1B1.13 cmt. n.1(C), which applies only to minor children and registered partners. *United States v. Johnson*, No. 2:13-231, 2020 WL 3000500, at *2 (S.D. Tex. June 2, 2020) (holding unless the elderly parent is the caregiver of defendant's own minor children, an elderly parent is not covered under USSG § 1B1.13); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) (movant's desire to help his adult daughter and her mother and to become a caregiver for his elderly mother and mentally challenged sister do not present the type of "familial relations . . . covered by the Application Notes 1(C) or 1(D) to U.S.S.G. § 1B1.13."). Hence, Anderson fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons for release.

    C.    <u>"Other" Reasons</u>

Anderson's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission

guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Anderson for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Anderson's situation. Anderson expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of December 8, 2020, the figures available at www.bop.gov list 103 inmates (out of a total inmate population of 2,739) and 36 staff members at Fort Dix as having confirmed positive cases of COVID-19, 266 inmates and 6 staff members who have recovered, and 0 inmates who have succumbed to the disease. Indeed, according to Anderson's medical records, as confirmed by Probation, Anderson tested positive for the disease on October 28, 2020, was placed in isolation, and has now recovered from the virus. Thus, it appears that the facility where Anderson is housed is handling the outbreak appropriately and providing adequate medical care.

Although Anderson expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Anderson, if he were to contract the virus and develop COVID-19 symptoms again, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling

reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)). Thus, Anderson has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release from imprisonment.

The court further finds that compassionate release is not appropriate in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at

693-94.  Anderson's offense of conviction entails his coercion and enticement of a minor to engage in sexual activity.  Anderson, age 35 at the time, initiated an online sexual relationship with a 14-year-old female, Jane Doe ("Doe").  Anderson and Doe met through a website, where Doe told Anderson that she was 14 years old and he claimed to be 25, when he was actually 35 years old.  In February 2015, Anderson flew over 1,300 miles from Baltimore, Maryland, to Beaumont, Texas, where he rented a vehicle and then a hotel room in Lumberton, Texas.  Anderson picked up Doe from school, and, after taking her to color guard practice, drove Doe to his hotel room, where they had oral sex and then engaged in vaginal intercourse.  He then gave her the morning after pill and took her home.  The following day, Anderson met Doe near her residence and again had oral sex and vaginal intercourse with her.  After his trip, Anderson started to text Doe and continued video chatting with her, including while he was engaging in and describing sexual activities in graphic terms.

On March 16, 2015, Anderson returned to Beaumont, Texas, rented a vehicle, and checked into a hotel in Lumberton.  On March 17, 2015, Anderson picked Doe up from her residence and drove her to a secluded area where they had oral sex and vaginal intercourse.  The following day, Anderson picked Doe up from her residence and took her to his hotel room, where they engaged in oral, vaginal, and anal sex.  He again gave Doe the morning after pill.  Doe, upon being confronted by her mother about a message of a sexual nature on her phone, reported the incidents to the police and underwent an S.A.N.E. examination, which revealed healed tears to her hymenal tissue and bruises to both her left and right breasts.  According to Anderson's PSR, he has a history of engaging in sexual relations with minors ranging in age from 14 to 17 years old.  One

of the minors, a 16-year-old female, exchanged numerous images depicting her engaging in sexually explicit conduct.

While he was in pretrial detention, Anderson told Probation that he has never been a heavy drinker, had only "experimented" with marijuana a few times, and had never used other illegal substances. When officers executed a search warrant at his residence, however, they discovered numerous types of steroids and drug paraphernalia. His mother confirmed to Probation that Anderson had used steroids. As the basis for his request for compassionate release to the Warden of FCI Fort Dix, Anderson listed as some of his documented chronic medical conditions: "Former Marijuana Smoker (15 years), Steroid User, [and] Habitual Drinker." In view of the circumstances surrounding his offense of conviction and history of poly-substance abuse, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from confinement.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 18,547 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent

and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Ambriz v. United States*, ___ F. Supp. 3d ___, No. 4:20-CV-568-P, 2020 WL 3066861, at *2 (N.D. Tex. June 5, 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

14

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, there is no reason to believe that Anderson would not revert to his drug use and pursuit of sexual relationships with underage females if released from prison at this juncture.

In short, Anderson has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

Consistent with the foregoing analysis, Anderson's Emergency/Expedited Motion for Reduction in Sentence (#53) is DENIED.

SIGNED at Beaumont, Texas, this 9th day of December, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE